**ORDERED.**

Dated: January 22, 2026

_/s/ Jason A. Burgess_
Jason A. Burgess
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

Antonio Gonzalo Jimenez,   Case No.: 3:24-bk-1636-BAJ

   Debtor.   Chapter 7
_____/

Carl Librizzi,

   Plaintiff,
v.   Adv. Pro. No. 3:24-ap-00091-BAJ

Antonio Gonzalo Jimenez,

   Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Proceeding came before the Court for trial on the Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. Section 523(a)(4) for approximately $584,024 that arises out of the Plaintiff's alleged claim that the Defendant's (the "Debtor") legal representation of him in his dissolution of marriage case (the "Dissolution Case") constitutes defalcation while

acting in a fiduciary capacity. For the reasons set forth herein, the Court finds that the law in the Eleventh Circuit supports a finding that the Debtor was *not* acting in a fiduciary capacity for purposes of 11 U.S.C. Section 523(a)(4), and the alleged debt is therefore dischargeable.

## **Findings of Fact**

On June 7, 2024, the Debtor filed a Chapter 7 case under the United States Bankruptcy Code. On his schedules, the Debtor listed the Plaintiff as an unsecured creditor who holds a disputed and contingent/unliquidated legal malpractice claim in the amount of $496,000. (Main Case, Doc. 1, pg. 29.) On September 11, 2024, the Debtor was granted a discharge under 11 U.S.C. Section 727. Id. at Doc. 9.

In 2021, the Debtor was retained by the Plaintiff to represent him in his dissolution case in the Circuit Court in and for Collier County, Florida (the "Dissolution Case").[1] The primary issue in the Dissolution Case was the classification of real property located at 4785 18th Ave. SE Naples, FL (the "Naples Home"). The Naples Home was acquired *prior* to the Plaintiff's marriage to his former wife, Dawn Waynauskas (the "Former Wife"),[2] and the title and mortgage on the property are *solely* in her name.[3] The Plaintiff alleges that he made pre-marital financial contributions to his Former Wife in the amount of almost $584,024 for the purchase and renovations of the Naples Home.

The crux of the legal battle in the Dissolution Case was that the Plaintiff characterized the pre-marital transfer of funds as "loans," while his Former Wife maintained the funds were gifted to her. To the Plaintiff's great detriment, there is *no* written document memorializing the existence of the alleged "loans." Complicating matters further, at the time the funds were transferred, the

---

[1] Case: 21-DR-1160.

[2] The Former Wife is now deceased.

[3] The Warranty Deed on the Naples Home was notarized on July 10, 2018. (D's Ex. 1).

2

Plaintiff was involved in a divorce case in Illinois (the "Illinois Divorce Case") with a previous wife. The Plaintiff testified at the trial in this Proceeding that he made various transfers of funds to his Former Wife without disclosing the transfers in the Illinois Divorce Case.

During the Dissolution Case, the Plaintiff's Former Wife filed a Motion for Summary Judgment (the "Summary Judgment Motion") which sought a determination that the Naples Home was non-marital property, the Debtor filed a response in opposition, and the Former Wife filed a reply to the opposition. (D's Exs. 8 - 10). The state court subsequently entered an Order Granting the Summary Judgment Motion.[4] In finding in favor of the Former Wife, the State Court stated:

> In this case, it was undisputed that the [Naples Home] is held by the Wife as a single woman, and was purchased by the Wife prior to the marriage. The property is not and has never been "held by the parties as tenants by the entireties." Accordingly, the statute and case law are clear that because Wife purchased the property prior to the marriage and it was held solely in her name, the [Naples Home] is her non-marital property.

(D's Ex. 17).

Although the Naples Home was clearly determined to be non-marital property in the Dissolution Case, the Plaintiff again sought an interest in the Naples Home following the death of his Former Wife by filing a Motion for Summary Judgment in her probate estate. In denying the relief sought, the probate court held the Plaintiff's "claims regarding the [Naples Home] and/or money owed were fully litigated or could have been litigated in [the Dissolution Action]; the doctrines of Res Judicata and release/bar prohibit Plaintiff, Carl Librizzi, from proceeding herein." (D's Ex. 16).

---

[4] In the Order Granting the Summary Judgment Motion, the state court stated that it "carefully and independently reviewed the motion, response, and reply." (D's Ex. 17, p. 5). The Plaintiff did not appeal the decision.

Displeased with the decision in the Dissolution Case that the Naples Home was not marital property, the Plaintiff subsequently filed a malpractice claim against the Debtor in state court, and the case is still pending.

**Conclusions of Law**

The issue before the Court is whether for purposes of 11 U.S.C. Section 523(a)(4) the Debtor committed "fraud or defalcation while acting in a fiduciary capacity," when he represented the Plaintiff in the Dissolution Case. For the reasons set forth below, the Court firmly answers this question in the negative.

A requirement pursuant to 11 U.S.C. Section 523(a)(4) is that a defendant commit "fraud or defalcation *while* acting in a fiduciary capacity," and that the debtor's fiduciary capacity must exist "prior to the act which created the debt." Guerra v. Fernandez-Rocha, 451 F.3d 813, 816 (11th Cir. 2006) (quoting Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993)); Great Am. Ins. Co. v. Brandt, 594 B.R. 829, 832–33 (Bankr. S.D. Fla. 2019). "Fiduciary" under § 523(a)(4) is a substantially narrower concept than "fiduciary" under state law. Clark v. Allen, 206 B.R. 602, 607 (Bankr. M.D. Fla. 1997). "The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." Quaif, 4 F.3d at 953. "The fiduciary relationship necessary for an exception to discharge requires the existence of an express or technical trust. An express or technical trust exists when there is a segregated trust res, an identifiable trust beneficiary, and trust duties established by contract or statute." In re McCue, 324 B.R. 389, 392 (Bankr. M.D. Fla. 2005); see also In re Douglass, 634 B.R. 1086, 1091–92 (Bankr. S.D. Fla. 2021).

Although the Eleventh Circuit has not specifically examined the issue of whether a typical attorney-client relationship places an attorney in a "fiduciary capacity" under Section 523(a)(4), it has consistently interpreted the statute narrowly and considers whether the statute at issue created

4

a technical trust.  See Fernandez-Rocha, 451 F.3d at 818 (finding that a physician in bankruptcy was not a fiduciary to a patient under the Florida Financial Responsibility Act because the law does not "require the physician to hold and account for the funds to third party patients ... [or] create any property right in a doctor's escrow fund in favor of a patient."); see also  Quaif, 4 F.3d at 954 (finding that under Georgia law an insurance agent acted in a "fiduciary capacity" because the agent (1) was required to "promptly account for and remit payments of funds to the insurer," and (2) was forbidden "from commingling the funds with his operating or personal accounts.").

Based on the Eleventh Circuit's historically narrow interpretation of the statute, the Court finds the narrow view taken by the Sixth, Ninth, and Tenth Circuits that an attorney-client relationship, without more, does not result in an attorney acting in a fiduciary capacity under Section 523(a)(4), to be instructive.  These circuits have adopted a narrow view that confines the inquiry to a determination of whether the money or property on which the debt is based was entrusted to the debtor, in their capacity as an attorney, in the context of a technical or express trust.  See Banks v. Gill Dist. Ctr., Inc., 263 F.3d 862, 870–71 (9th Cir. 2001); R.E. America, Inc. v. Garver, 116 F.3d 176, 179 (6th Cir. 1997); Fowler Bros. v. Young, 91 F.3d 1367, 1371–72 (10th Cir. 1996). As accurately noted by a bankruptcy court in the Southern District of Florida that examined this issue:

> The Eleventh Circuit's approach more closely aligns with the Sixth, Ninth, and Tenth Circuits and leaves no room for the Court to consider, like the Second and Seventh Circuits, other possible factors such as power dynamics or generalized duties of care. Instead, the Eleventh Circuit closely adheres to the Supreme Court's strict and narrow interpretation of the phrase "fiduciary capacity," which is also consistent with the general mandate to strictly construe all exceptions to discharge in favor of the debtor.

In re Douglass, 634 B.R. 1086 at 1093 ((finding that "[t]hough the management of a cause of action might burden an attorney with significant and solemn duties to their client, it does not create the

5

sort of technical trust necessary to place a debtor in a 'fiduciary capacity' under § 523(a)(4)."); see also Williams v. Olson (In re Olson), Adv. No.: 3-25-ap-0003-JAB (Bankr. M.D. Fla. Nov. 18, 2025) (finding that the defendant's alleged failure to manage the plaintiff's lawsuit against her former husband in a manner acceptable to her did "not create the trust necessary to create a fiduciary capacity"). Based on this view, neither an attorney's "general fiduciary duty of confidence, trust, loyalty, and good faith," nor the "inequality between the parties' knowledge or bargaining power" in which the attorney-client relationship is rooted are adequate to forge a "fiduciary capacity" under section 523(a)(4).[5] See In re Young, 91 F.3d at 1372. The Court also finds a case decided by a sister court in the Middle District of Florida (and affirmed by the Eleventh Circuit) to be instructive. In re Forrest, No. 8:20-AP-00447-RCT, 2021 WL 1784085, at *10 (Bankr. M.D. Fla. Apr. 2, 2021), aff'd 47 F.4th 1229 (11th Cir. 2022). In Forrest, the court held that trust obligations set forth in the Perishable Agricultural Commodities Act ("PACA") do not satisfy the "fiduciary capacity" requirement to render a PACA-related debt non-dischargeable under Section 523 (a)(4). Id. In reaching this holding, the court eloquently stated:

> "[t]his is an issue on which reasonable minds can and do differ, and this Court does not presume, or even wish, to have the last word. But forced to decide, this Court errs on the side of the "strict and narrow" interpretation of § 523(a)(4) and concludes that some clear lines of demarcation should exist before an individual is saddled with a business debt for eternity. Ultimately, this is an issue for the Eleventh Circuit to resolve."[6]

Id.

---

[5] Conversely, the Second and the Seventh Circuits have taken a much broader view and have held that although the attorney-client relationship does not typically involve a technical or express trust, the relationship qualifies. The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes, 183 F.3d 162, 168 (2d Cir. 1999); see also In re Marchiando, 13 F.3d 1111, 1115 (7th Cir. 1994) ("[A] lawyer is deemed the fiduciary of his client, even if he does not manage a fund entrusted to him by the client."). The Court does not find this line of cases either persuasive or instructive, especially given the Eleventh Circuit's historically narrow view of Section 523(a)(4).

[6] The Court in Forrest also accurately noted, "Congress has never been shy or reluctant about enacting express exceptions to the bankruptcy discharge. No such express exception yet exists for individual PACA-related liability." Forrest, 2021 WL 1784085, at *10.

While the Court recognizes that there are circumstances in which a technical trust relationship can arise between an attorney and a client, such as an attorney holding his client's funds in his trust account, the facts under this case clearly do not fall within the narrow scope of a "fiduciary" under Section 523(a)(4). The Court also notes that the court's determination in <u>Forrest</u>, that trust obligations set forth in PACA are non-dischargeable under Section 523(a)(4), was comparatively speaking a closer call than the instant issue. In light of the Eleventh Circuit's affirmance of the court's decision in <u>Forrest</u>, this Court finds it wise to err on the side of a strict and narrow interpretation of Section 523(a)(4). The crux of the Plaintiff's argument is that he is dissatisfied with how the Debtor handled his Divorce Case because he received an adverse ruling in the State Court. Even *if* the Court were inclined (which it is not) to accept the view of what transpired in the Dissolution Case through the Plaintiff's lens, it would not alter the fact that a technical trust relationship never arose between the parties, and even if one had arisen, there is a complete dearth of evidence to support a finding that the Debtor committed defalcation.

## **Conclusion**

Based on the Eleventh Circuit's historically narrow interpretation of Section 523(a)(4), the Court finds that a technical trust relationship did not arise in this Case. The Plaintiff's displeasure with the Debtor's representation of him, in what appears to have been a highly contentious divorce case, does not transform the party's typical attorney-client relationship into the narrow and high bar that the term "fiduciary" under Section 523(a)(4) requires.

In fairness to the Debtor, the Court notes that the facts and circumstances surrounding the Plaintiff's transfer of funds to his Former Wife were tainted from the start.[7] The decisions Plaintiff

---

[7] The practice of law, even on the best of days, is a difficult profession, and the Court appreciates the professionalism and composure the Debtor conducted himself with throughout the trial.

made in his Illinois Divorce Case to hide and transfer assets surreptitiously are his and his alone. Compounding matters, even *after* the Plaintiff's Illinois Divorce Case was finalized and he re-married, he never sought to be added to the deed on the Naples Home or had any legal paperwork executed. This is the set of facts that the Debtor inherited when he was retained by the Plaintiff. There is nothing that the Debtor or any attorney could do to alter the fact that there is *no* legal document in existence to prove that the transfer of funds from the Plaintiff to his Former Wife was a "loan."

The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law that Section 523(a)(4) is not applicable, and that the Plaintiff's alleged malpractice claim against the Debtor is dischargeable.[8]

---

[8] As the Court stated at the conclusion of the trial, counsel for both parties did an excellent job in litigating this matter. The facts and law, however, were not on the Plaintiff's side.